W. M. CARROLL ET AL. v. H. L. WILLIAMS, COUNTY TREASURER, ET AL.

No. 2919.   Decided April 10, 1918.

**1.—Counties—Taxation—Commissioners Court—Transfer of Funds.**

Article 1440, Rev Stats., authorizing the Commissioners Court to transfer money on hand from one fund to another is not applicable to an attempted transfer from the fund for general county purposes to the road and bridge fund. As it originally stood in the Revised Statutes of 1879 (art. 969) this applied only to funds created by statute (arts. 1433, 1438, Rev. Stats., being arts 962, 967, Rev. Stats., 1879) and not to funds created by the Constitution (art 8, sec. 9) and should still receive such construction and application. (Pp. 159-162.)

**2.—Same—Taxation for Purpose of Transfer to Another Fund.**

If article 1440, Rev. Stats., were held applicable to the transfer of one

fund created by the Constitution to another, such transfer would still not be lawful where the Commissioners Court had levied the tax producing it, not in good faith and for expenditure for the purpose for which it was professedly levied, but with the intention of transferring it to another fund, thereby creating and expending in the latter an amount in excess of what could be lawfully raised by taxation for that purpose. An attempt so to do could be restrained by injunction. Ault v. Hill County, 102 Texas, 335, and other cases followed. (P. 162.)

3.—Same—Constitutional Law.

Article 8, section 9, of the Constitution, was designed to limit, not only the taxes which could be levied by a county for the several purposes mentioned, but the amounts which it was authorized to expend for such purposes from money raised by taxation. It inhibits such expenditure in excess of the fund which it could lawfully raise for the purpose through the device of transferring thereto money from other funds and raised by taxation for other purposes. (Pp. 162-164.)

4.—Same.

Reviewing the history of constitutional provisions on the subject, it appears to be the intention of art. 8, sec. 9, of the Constitution, that funds raised by taxation for specific purposes therein enumerated should be expended for such purposes, and are not authorized to be transferred to other funds under the powers conferred by art. 1440, Rev. Stats. (P. 164.)

5.—Same.

The fact that the road and bridge fund as increased by transfer thereto of funds raised by taxation for general county purposes did not exceed the amount which might have been lawfully raised by taxation for road and bridge purposes under the maximum taxes authorized, but not levied, did not render such transfer lawful. (Pp. 164, 165.)

6.—Same.

The amount which a county could lawfully expend annually from a given fund created by the Constitution out of taxes which it authorized might be increased by an unexpended balance of such fund brought over from the previous year, but not by transfer from another fund created by the Constitution for other purposes. (P. 168.)

7.—Parties—Injunction.

Holders of outstanding warrants against the road and bridge fund of a county were neither necessary nor proper parties to an action for injunction restraining the payment for such purposes of money unlawfully transferred thereto from the fund for general county purposes. (P. 168.)

Error to the Court of Civil Appeals for the Ninth District, in an appeal from Jefferson County.

Carroll and others sued for injunction restraining Williams, county treasurer, from paying out, on warrants drawn against the county road and bridge fund, certain moneys alleged to have been transferred unlawfully to that fund from another. The trial court sustained injunction. On appeal by defendants the judgment was reversed in part and in part sustained. Both parties then applied for and obtained writ of error.

*Chenault O'Brien* and *George Chilton,* for plaintiffs in error Carroll et al.—The Constitution of the State of Texas, section 9, article 8, specifies the different purposes for which taxes may be levied by the county; one of said purposes is designated as "county purposes" and

the maximum amount which may be levied for this purpose is stated. Another purpose specifically provided for by said Constitution is that of "roads and bridges," and the amount which may be levied for this specific purpose is stated. And to permit the levy and collection of taxes for one of these specified purposes and the use thereof for another one of these specified purposes is contrary to the language, spirit and, intention of this constitutional provision, and also to the statutes of the State with reference to the levy and collection of taxes. Constitution, art. 8, sec. 9; Lufkin v. City of Galveston, 63 Texas, 437; Dean v. Lufkin, 54 Texas, 265; City of Louisville v. Button, 118 Ky., 732, 82 S. W., 293; 37 Cyc., p. 1588; 27 Am. & Eng. Enc. of Law (2nd ed.), Taxation.

The Court of Civil Appeals erred in permitting said transfer of tax money, for the reason that the property tax payers of Jefferson County have the right to demand that all tax money on hand in the general fund shall be appropriated and used for the payment of lawful expenditures of the county chargeable to said fund; and if there is more money in the fund this year than is necessary to provide for such charges for the current year, it is the duty of the officers of the county to reduce the taxation for such purposes for next year and tax payers have a lawful right to demand this. McQuillan, Municipal Corporations, vol. 5, sec. 2596; Chicago v. Nichols, 177 Ill., 97; Woldenberg v. Sampson, 55 Wash., 152; Wolff Chemical Co. v. Philadelphia, 217 Pa., 215; Cooley on Taxation, vol. 2 (3rd ed.), 1433-1434; Crampton v. Zabriskie, 101 U. S., 601.

The purpose and intention of the Constitution is, not only to put a limit on the amount that may be levied for a certain purpose, but also to require the tax levying bodies to specify the amount to be raised by taxation each year for each specific purpose. Ault v. Hill County, 102 Texas, 337; Jefferson Iron Co. v. Hart, 18 Texas Civ. App., 525, 45 S. W., 321; Citizens Bank v. City of Terrell, 78 Texas, 450.

*James A. Harrison* and *George D. Anderson,* for defendants in error Williams et al.—The court erred in holding that the Commissioners Court had no legal right to transfer the entire $40,000 in controversy from the general fund to the road and bridge fund, because article 1440, Revised Statutes, expressly authorized the transfer and such statute is valid and binding. San Antonio v. Routledge, 102 S. W., 769; Caven v. Coleman, 100 Texas, 467, 101 S. W., 199; Broussard v. Wilson, 183 S. W., 814; State v. Appleby, 136 Mo., 408, 37 S. W., 1122.

Article 8, section 9, of the Constitution is not a limitation on expenditures, but a limitation on taxation. The Constitution of Texas does not prohibit the use of money levied for one county purpose from being applied to another county purpose. Brown v. City of Galveston, 97 Texas, 1; Lytle v. Halff & Bro., 75 Texas, 128; Logan v. State, 111 S. W., 1028.

Unless expressly prohibited in the State Constitution, the Legislature

has plenary power and control over county affairs, and can authorize counties to apply funds obtained by taxation to a use or purpose different from that originally designated. 7 Am. & Eng. Enc. of Law (2nd ed.), 967; 11 Cyc., 582; 8 Cyc., 903; 37 Cyc., 1588.

In that provision of article 8, section 9, of the Constitution for a tax by counties of 25 cents on each hundred dollars valuation for streets the word streets, as there used, applied to counties, means roads. Sandmeyer v. Harris, 27 S. W., 285.

The holders of warrants outstanding against the road and bridge fund were necessary parties to the injunction. Pendleton v. Ferguson, 99 Texas, 296, 89 S. W., 758.

MR. JUSTICE HAWKINS delivered the opinion of the court.

The material facts which are disclosed by the record and are binding upon this court are to this effect:

Annually, for several years prior to 1914, the Commissioners Court of Jefferson County, as part of a general scheme for exacting from tax payers and expending on roads and bridges of the county more money. than the Constitution of this State permits to be raised by taxation and expended for that purpose, deliberately and purposely levied, for various other purposes defined by said Constitution, taxes which were known by that court, at the times of such levies thereof, to be much greater in amounts than were required to meet the current expenditures for such other purposes, and afterwards transferred such excesses in such funds to the road and bridge fund, and expended same accordingly.

The general purpose of this suit was to stop that practice. Specifically the action affects the expenditure of a large sum of money derived from such excessive tax levy for the year 1914.

In pursuance of said scheme, and in addition to a road and bridge tax of 27.05 cents on the one hundred dollars valuation of property, the Commissioners Court had levied, for 1914, for general "county purposes," a maximum tax of 25 cents per hundred, said latter rate being intentionally and largely excessive, and out of the proceeds thereof, and on May 12, 1915, had transferred to the road and bridge fund an *estimated* excess amounting to $40,000.

Acting as a tax payer, and for himself and others similarly situated, plaintiff in error Carroll (one of the commissioners), through a petition setting out pertinent allegations, sought from the District Court an injunction perpetually to prevent the defendant in error Williams, as county treasurer, from paying out, on warrants drawn against the road and bridge fund, all or any portion of the $40,000 so transferred.

A restraining order having been issued, and the county treasurer, the Commissioners Court, the county judge, and the county commissioners other than Carroll having answered, the District Court, upon a formal hearing, found from the evidence that the allegations of Carroll were substantially true, as indicated herein, and that of the money so transferred $2560 had been paid out on warrants drawn against the

road and bridge fund, leaving of said $40,000 a residue of $37,440, and thereupon, on May 25, 1915, temporarily enjoined the county treasurer from paying out said residue or any portion thereof on warrants drawn against the road and bridge fund.

Upon appeal the Court of Civil Appeals for the Ninth Supreme Judicial District did not disturb the trial court's findings of fact, upon which no question has been raised, but found, among others, these facts:

(a) That said taxes for the road and bridge fund for 1914 aggregated $14,958 less than would have been realized from a levy on a maximum legal basis of 30 cents per hundred, half of such maximum rate being expressly and unconditionally authorized by said Constitution and by statute, and an additional 15 cents rate for the further maintenance of the public roads at a referendum county election.

(b) That at date of said transfer the road and bridge fund contained an unexpended balance of about $4176.70.

(c) That prior to the service of the writ of injunction, and out of the money so transferred $2560 had been expended on warrants drawn against the road and bridge fund.

Adding the two last mentioned amounts, and deducting their sum from the difference between the proceeds of said actually applied tax rate of 27.05 cents and what would have been the proceeds of said maximum rate of 30 cents for roads and bridges had it been applied— $14,958—($4176.70+$2560=$6736.70)=$8221.30 (and calling the resulting amount $8222), the Court of Civil Appeals held that such amount, in addition to said $2560, aggregating $10,782, and only that much, had been legally transferred out of the $40,000 to the road and bridge fund; whereupon the court so reformed the judgment of the trial court as to permit payment of an additional $8222 out of said $40,000 on warrants drawn against the road and bridge fund, but in all other respects affirmed the judgment of the trial court.

However, upon motion for rehearing, the Court of Civil Appeals admitted error in making said deduction of said unexpended balance, and so reformed its judgment as to permit payment of an additional $12,398, instead of only $8222, out of said $40,000, on road and bridge warrants. 182 S. W., 29.

Each side presented here a separate application for a writ of error, which this court granted.

In behalf of the county treasurer and the Commissioners Court it is contended here that said transfer of the $40,000 and the expenditure thereof on roads and bridges are fully authorized by Revised Statutes, 1911, article 1440, when properly construed in conjunction with articles 2242 and 7357; but in behalf of plaintiff in error Carroll it is urged that such transfer is inhibited by section 9 of article 8 of our State Constitution.

Our Constitution provides:

"No *county,* city or town *shall levy* more than twenty-five cents for city or county purposes, and not exceeding fifteen cents for roads and

bridges, and not exceeding fifteen cents to pay jurors, on the one hundred dollars valuation, except for the payment of debts incurred prior to the adoption of the amendment September 25, 1883; and for the erection of public buildings, streets, sewers, waterworks and other permanent improvements, not to exceed twenty-five cents on the one hundred dollars valuation, in any one year, and except as is in this Constitution otherwise provided; and *the Legislature may also authorize an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads;* provided that a majority of the qualified property tax-paying voters of the county voting at an election to be held for that purpose shall vote such tax, *not to* exceed fifteen cents on the one hundred dollars valuation of property subject to taxation in such county." Const. Texas, sec. 9, art. 8.

"The County Commissioners Court . . . shall exercise such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of this State, or as may be hereafter prescribed." Sec. 18, art. 5.

The Revised Statutes of 1911 provide:

*"Said court shall have the power to levy and collect a tax* for county purposes, not to exceed twenty-five cents on the one hundred dollars valuation, and a tax not to exceed fifteen cents on the one hundred dollars valuation to supplement the jury funds of the county, and not to exceed fifteen cents for roads and bridges on the one hundred dollars valuation, except for the payment of debts incurred prior to the adoption of the amendment to the Constitution, September 25, A. D. 1883; and for the erection of public buildings, streets, sewers, waterworks and other permanent improvements, not to exceed twenty-five cents on the one hundred dollars valuation in any one year, and except as in the Constitution otherwise provided; provided, however, the court may levy an additional tax for road purposes not to exceed fifteen cents on the one hundred dollars valuation of the property subject to taxation, under the limitations and in the manner provided for in article 8, section 9, of the Constitution, and in pursuance of the laws relating thereto." Art. 2242 (Acts 1907, p. 40).

*"The Commissioners Courts of the several counties* of this State *shall have the power to levy,* for county revenue purposes, a tax of one-fourth of one per cent, and, for *roads and bridges,* fifteen cents on the one hundred dollars valuation of all property subject to a State·tax by the provisions of this title; and, for the payment of debts incurred prior to September, 1883, and for the erection of public buildings and other permanent improvements, they shall have the power to levy a tax not to exceed twenty-five cents on the one hundred dollars valuation in any one year; and, *for the improvement of public roads, a tax not to exceed fifteen cents* on the one hundred dollars valuation under the restrictions provided in chapter seven of title ninety-seven." Art. 7357 (Acts 1885, p. 105, Acts 1891, p. 51.)

Revised Statutes, 1911, title 97, contains no chapter 7, and relates,

exclusively to notaries public.   The reference intended probably was to Revised Statutes, 1895, title 97, chapter 7, of which is on "road tax," and, in article 4786, refers to "the provisions of the amendment of 1889 to the Constitution of the State of Texas, adopted in 1890," which have been carried into section 9 of article 8, supra.   See, also, Acts 1891, p. 51.   So the "restrictions" referred to in article 7357 appear to be those concerning a county referendum election approval of the *additional* 15 cents per hundred tax for public roads.

The transfer of county money from one to another fund is thus provided for in Revised Statutes, 1911:

"Art. 1440.   The Commissioners Court shall have power, by an order to that effect, to transfer the money in hand from one fund to another, as in its judgment is deemed necessary and proper, except that the funds which belong to class first shall never be diverted from the payment of the claims to which the same are appropriated by article 1438, unless there is an excess of such funds."   (Rev. Stats., 1879, art. 969.)

The reference to article 1438 is developed by the two preceding articles, as follows:

"Art. 1433.   .Claims against a county shall be registered in three classes, as follows:

"1.   All jury scrip and scrip issued for feeding jurors.

"2.   All scrip issued under the provisions of the road law or for work done on roads and bridges.

"3.   All the general indebtedness of the county, including feeding and guarding prisoners, and paupers' claims."   (Rev. Stats., 1879, art. 962.)

"Art. 1438.   The funds received by the county treasurer shall be classed as follows:

"1.   All jury fees, all money received from the sale of estrays, and all occupation taxes; and this class of funds shall be appropriated to the payment of all claims registered in class first, described in article 1433.

"2.   All money received under any of the provisions of the road and bridge law, including the penalties recovered from railroads for failing. to repair crossings, prescribed in article 6494, and all fines and· forfeitures; and this fund shall be appropriated to the payment of all claims registered in class second.

"3.   All money received, 'not otherwise appropriated herein or by the Commissioners Court; and the funds of this class shall be appropriated to the payment of all claims registered in class third."   (Rev. Stats., 1879, art. 967.)

For two reasons neither the stated transfer of this $40,000 from the specific fund for which, ostensibly, it was levied and collected, nor the expenditure of the whole or any part of it in payment of warrants drawn against the fund to which it was transferred, can be sustained as being either authorized or permitted by law.

*First.*   The provisions of article 1440, *supra,* which, alone, are relied upon as authorizing such attempted transfer, and, as a corollary, such expenditure of this $40,000, are not applicable under the facts.

(a)   Originally, in the Revised Statutes of 1879, the purpose and legal effect of that statute were to authorize transfer of the purely statutory funds to the extent mentioned in article 967, now article 1438, *supra,* and it does not deal with the two classes of county funds which were designated in said section 9 of article 8 of the Constitution of 1876, which then was in force; and, similarly, the present legal effect of that statute should be limited to purely statutory funds, and should not be held to embrace any of the five classes of county funds specifically designated in that section of the Constitution in its present amended form, wherein a separate maximum tax rate for each such fund is prescribed. This construction of article 1440 at once attributes to it a salutary and efficient purpose, amply justifying both its enactment and its retention, and relieves it of conflict with said provisions of the Constitution.   The applicable rule of statutory construction is plain and well settled.

(b)   Moreover, in so far as the money so transferred in the case at bar is concerned, the tax levy through which it was raised was not made in good faith, but, on the contrary, as we have seen, the rate of that levy was fixed so high for the express purpose of providing revenue largely exceeding current demands upon the fund for "county purposes," and solely in order that, according to long continued practice in Jefferson County, such excess might be so transferred to the road and bridge fund and expended accordingly.   Hence, even if article 1440 were to be held applicable, ordinarily, to such constitutional as well as to purely statutory county funds, that statute should not be permitted to cloak and encourage the transfer and consequent expenditure, for one such purpose, of money raised by taxation ostensibly and avowedly for a distinctly different such purpose, especially when, as in this instance, the design and practical effect of the transaction would be to increase the total expenditures for such latter purpose far beyond the amount of the proceeds of the tax actually levied therefor, and even beyond the amount which might have been raised by a levy at the maximum combined constitutional rate therefor, and probably far exceeding even the sum of that amount and any and all other amounts legitimately flowing into the fund for that purpose from purely statutory sources, such, for example, as penalties from railway companies for failure to repair crossings.   Art. 1438, sec. 2.   See Ault v. Hill County, 102 Texas, 335, 116 S. W., 359, 111 S. W., 425; Jefferson Iron Co. v. Hart, 18 Texas Civ. App., 525, 45 S. W., 321; Patty v. McReynolds, 157 S. W., 184.

Furthermore, the attempted transfer was made upon a mere estimate that the fund from which the transfer was made then included an excess of $40,000, and at a time when it could not have been foreseen what legal and even urgent demands might come against that fund before the close of the year.   See San Antonio v. Rutledge, 102 S. W., 756.

*Second.*   Going to the real gist of the main issue before us, section 9

of article 8 of our State Constitution, *supra,* inhibits any and all transfers of tax money from one to another of the several classes of funds therein authorized, and, as a sequence, the expenditure, for one purpose therein defined, of tax money raised ostensibly for another such purpose. The immediate purpose in so prescribing a separate maximum tax rate for each of the classes of purposes there enumerated is, no doubt, to limit, accordingly, the amount of taxes which may be *raised* from the people, by taxation, declaredly for those several purposes or classes of purposes, respectively—but that is not all; the ultimate and practical and obvious design and purpose and legal effect is to inhibit excessive *expenditures* for any such purpose or class of purposes. By necessary implication said provisions of section 9 of article 8 were designed, not merely to limit the tax rate for certain therein designated purposes, but to require that any and all money raised by taxation for any such purpose shall be applied, faithfully, to that particular purpose, as needed therefor, and not to any other purpose or use whatsoever. Those constitutional provisions control, not only the raising, but also the application, of all such funds; and such is the legal effect of articles 2242 and 7357, *supra,* when properly construed and applied.

True, the Constitution does not say, in so many words, that money raised by a county, city or town, by taxation for one such purpose shall never be expended for any other purpose—not even for another of the five general classes of purposes defined and approved in said section 9— but that, we think, is its plain and certain meaning and legal effect. The very definitions of those several classes of purposes, and the declaration of authority to tax the people therefor, respectively, coupled, as they are, in each instance, with a limitation of the tax rate for that class, must have been predicated upon the expectation and intent that, as a matter of common honesty and fair dealing, tax money taken from the people ostensibly for one such specified purpose shall be expended, as needed, for that purpose alone, as well as that the tax rate for that particular class, in any one year, shall not exceed the prescribed maximum.

Conversely, and upon a like course of reasoning, it must have been intended that expenditures for any such designated purpose shall never include tax money in excess of the proceeds of the maximum tax rate prescribed by the Constitution for that purpose.

Unless our above stated conclusions are sound there was no good reason for making the constitutional limitations upon the said five separate designated tax rates specific; the limitation upon the taxing power might as well have been couched in general terms applicable to all the designated purposes collectively, although prescribing an aggregate maximum tax rate applicable to any and all such purposes in the discretion of the governing body. In other words, unless said constitutional provisions were designed to limit the application or expenditure of each such tax fund for the specific purpose or purposes for which, declaredly, it is raised, as well as to limit the tax rate therefor, the same result in

the way of protecting the people against exorbitant taxes could have been attained more simply and more conveniently by making, in said section 9 of article 8, one general limitation upon the taxing power with reference to all five such classes of purposes, collectively, thereby leaving the governing body free to apply any and all such funds according to its own judgment, provided only that no portion thereof shall be applied to any extraneous purpose, not included by the terms of that section.

Said conclusions find support in the history of the development of the quoted provisions of section 9—to which reference was made in the opinion of the Court of Civil Appeals by Chief Justice Conley, citing Harris' Constitution, wherein it is said: "Neither the Constitutions of 1845, 1861, 1866 nor that of 1869, fixed a limit for the tax rate for State, county or municipal purposes, but left it to the discretion of the Legislature." p. 584. The effect of each seems to have been to leave the Legislature free to authorize the Commissioners Courts to deal with the subject as the law-making department might deem expedient. But, beginning in our Constitution of 1876, and running through the amendments of 1893, 1890, and 1907, the specific designation, in section 9 of article 8, *supra*, of general classes of purposes of county, city or town taxation, with *a limited rate* in each instance, was both a departure from the original plan and a progressive growth. That change and that development, when considered together, disclose, we think, a settled determination upon the part of our people, not only to fix the maximum rates of taxation for the designated purposes, respectively, but, incidentally, to restrict to each such purpose the application and expenditure of all tax money levied, assessed, and collected declaredly for that purpose. Thus the whole matter has been placed beyond the power and authority of the Commissioners Court and even of the Legislature itself, by the embodiment of those far-reaching requirements in our organic law.

Under a Constitution which designated certain specific funds for counties, cities, and towns, and fixes a different maximum tax rate for each such fund, why should the local governing body be permitted to expend for one such purpose money raised by taxation under an entirely different grant of power and for an essentially different constitutional purpose? That, it seems to us, would not conserve any sound public policy.

No implied power to transfer money from one to another such constitutional fund is derived from the fact that the original fund contains more than enough to meet the current demands against it. Such excess may be retained in that fund, and applied in succeeding years to the very purpose for which it was raised, thereby possibly reducing the future tax rate for that purpose.

Nor is the asserted power to transfer money from one to another such fund aided, even to the slightest extent, by the circumstance that any particular levy of taxes for the benefit of the specific fund which would

be augmented by such transfer was made at a rate less than the maximum rate permitted by the Constitution, or even, as in the case at bar, at a rate.less than that authorized at a referendum election. The power to tax, up to the authorized maximum, but *separately,* for each such purpose, is conferred, and exists, and may be exercised freely, without regard to the existence or non-existence of the asserted power to transfer, under any circumstances, the proceeds of such taxation, or any portion thereof, from one to another such fund. But, on the other hand, said asserted power of transfer of tax money from one to another such fund, and the consequent expenditure thereof for a purpose essentially different from that for which, ostensibly, it was taken from the tax payer, effectually is inhibited and nullified, in law, by reason of the fact that our Constitution itself—to say nothing of our statutes—specifically has designated and permitted the creation of each such separate fund, and for each expressly and specifically has prescribed a separate maximum tax rate. Utterly and radically at variance with those provisions is the whole conception of a transfer of money from one to another such fund, and its consequent application accordingly.

To hold otherwise—to say that money raised by taxation ostensibly for one such constitutional purpose may be expended for another such purpose (even though when added to the amount similarly raised for such other purpose the aggregate does not exceed the authorized maximum for that other purpose), would encourage excessive tax levies, in derogation of said section 9 of article 8 and in utter disregard of fundamental property rights of tax payers. Such practice is violative of public good faith in the exercise of the taxing power, and surely can not be within contemplation of our Constitution. Neither long continued nor extended custom can justify such a departure from its requirements.

From what has been said, and ascribing to article 1440, *supra,* a meaning and legal effect in harmony rather than in conflict with our Constitution, it follows that said statute confers no legal authority whatever for the attempted transfer of said $40,000 or for the proposed expenditure of the residue thereof on roads and bridges wherefore the District Court did not err in enjoining such expenditure.

Of persuasive although not all of directly decisive force in support of the views herein expressed are the above cited and also the following authorities: Lufkin v. Galveston, 63 Texas, 437; Dean v. Lufkin, 54 Texas, 271; Ft. Worth v. Davis, 57 Texas, 225; Citizens' Bank v. Terrell, 78 Texas, 450, 14 S. W., 1003; Union Pac. Ry. Co. v. Dawson, 12 Neb., 255, 11 N. W., 307; State v. L'Engle, 40 Fla., 392, 24 So., 539; Louisville v. Button, 118 Ky., 732, 82 S. W., 293; State v. Commissioners, 21 Kan., 308; Vanover v. Davis, 27 Ga., 354; Morgan v. Railway Co., 6 Colo., 478; State v. Railway Co., 115 Ala., 250, 22 So., 589; Elyton Land Co. v. Birmingham, 89 Ala., 477, 7 So., 901; Desty, Taxation, p. 1059; Cooley, Taxation (3rd ed.), pp. 172-173; Wood Chemical Co. v. Philadelphia, 217 Pa., 215.

It is true that, as pointed out by defendants in error, section 7 of

article 8 of our Constitution does expressly inhibit the diversion by the Legislature of any special fund that may or ought to come into the State Treasury, and there seems to be in our Constitution no express inhibition against the diversion or transfer of county, city or town funds designated in that instrument; but we regard such express inhibition as not absolutely necessary to accomplish that purpose, the quoted phraseology of section 9 of article 8 having, by necessary implication, the same legal effect.

Defendants in error seek, upon the following grounds, to justify said transfer and the proposed expenditure of the $40,000:

1.    That the money was collected for general "county purposes," which, they say, includes the construction and maintenance of roads and bridges.

2.    Their sixth assignment here is to the effect that the portion of said section 9 of article 8 which authorizes a tax "for the erection . . . of streets and other permanent improvements" includes streets in an incorporated city or town, and the "statement" thereunder is to the effect that all proceeds of all outstanding road and bridge bonds of Jefferson County had been expended in building new and permanent shell roads, and that the rate of taxes actually levied for sinking fund and interest on such bonds aggregates only about seventeen cents on the one hundred dollars valuation of property, and that neither the orders for issuing said bonds nor the order levying the tax for interest and sinking fund therefor expressly charged such tax rate against any particular authorized tax rate or fund.    The contentions under said assignments appear to be, substantially, as follows:

(a)    That, legally, there might have been levied, to be expended on roads and bridges and on "streets" of a "permanent" character, taxes aggregating 55 cents on the one hundred dollars valuation of property, comprising the 15 cents per hundred expressly and unconditionally authorized "for roads and bridges" and the 15 cents per hundred authorized, at said referendum election, "for the further maintenance of the public roads," and the 25 cents per hundred for "streets . . . and other permanent improvements"; that "streets," as that word is used, means throughout the county, whether lying outside or inside of cities and towns; wherefore (the argument seems to run), even if the provisions of said section 9 of article 8 should be held to restrict *expenditures* for the designated purposes, there might, nevertheless, be expended, legally, for roads and bridges, any amount not exceeding the aggregate amount which would have been realized from three contemporaneous levies on such 55 cents per hundred basis; and, consequently, inasmuch as the sum of all proceeds of all actual levies for 1914 for all such purposes, even when combined with said $40,000 so transferred, was less than would have been realized from such maximum authorized levies on said 55 cents basis the amount so transferred was not excessive, and, inasmuch as *permanent streets* are roads, and construction and

maintenance of roads are "county purposes," it was proper to make the transfer from the general purpose county fund.

(b)    That all proceeds of all outstanding road and bridge bonds of the county had gone into the construction of new and permanent shell roads or streets, miles of which lie within cities and towns, the extent and cost of such portions thereof not being shown by any evidence; and that so much of the interest and sinking fund on such portion of such bonds as went to pay for such portions of such streets could be charged, legally, and ought to be considered as charged, against said authorized rate of 25 cents per hundred for permanent "streets" rather than as against said authorized rate of 15 cents for maintenance of public roads; and that, even though the entire tax actually levied for sinking fund and interest on all of said bonds—about fifteen cents on the one hundred dollars valuation of property—were all charged against said authorized 25-cent rate in 1914, a margin of about fifteen (ten?) cents, which, if levied on the taxable property of the county, would have produced more than the $40,000 so transferred; wherefore (the argument seems to run), the expenditures for roads and bridges legally may be augmented to that extent, and that amount legally may be charged up against such marginal authorized rate for the *permanent street,* etc., fund, and, inasmuch as "streets" are roads, and construction and maintenance of roads are "county purposes," said amount properly and legally may be transferred from the general fund to the road and bridge fund.

Said contentions are answered, generally, as follows, in connection with the foregoing:

Our Constitution, and our statutes also, draw a sharp distinction between the purpose of the fund from which and the purpose of the fund to which this attempted transfer was made, classifying them separately, and prescribing for each a separate and specific maximum tax rate. The classification, "for roads and bridges," excludes those objects from the general class embraced by "for county purposes." Lufkin v. Galveston, Dean v. Lufkin, Railway Co. v. Dawson County, State v. L'Engle, State v. Railway Co., all supra.

Counsel for defendants in error apparently assume that in addition to the proceeds of the tax actually levied declaredly and specifically for roads and bridges the Commissioners Court legally might expend thereon a sum of money equal to the difference between said proceeds and the amount which might have been derived from the levy of the prescribed maximum rate for roads and bridges, or even from all maximum rates for any and all *road, bridge and permanent street* purposes; and that error probably rests, in turn, upon the fundamentally erroneous proposition, previously asserted by them, to the effect that the limitations prescribed by said section 9 of article 8 of our Constitution relate, solely, to the *raising,* and not to the *expenditure,* of proceeds of taxation for the several purposes therein designated. We regard it as clear that the fact that the levy actually made "for roads and bridges"—27.05 cents— was less than the aggregate of the prescribed maximum rates for "roads

and bridges" and "for maintenance of public roads" and for permanent "streets," etc.—55 cents—and even less than the maximum 30-cent rate authorized by the Constitution and statutes and said referendum vote considered together, for use on roads and bridges, is wholly immaterial to any issue in the case at bar, and does not even tend to authorize or to justify either the attempted transfer or the proposed expenditure of said $40,000.

Ordinarily, and when no money in a particular fund has been brought over from some previous year, and although the constitutional restriction is leveled at the rate at which taxes for the designated class of purposes may be levied rather than at the amount of the expenditure for such class of purposes, the maximum amount which may be expended for such class of purposes is to be determined, practically, by the amount actually and specifically raised therefor, in contradistinction to the amount which legally might have been levied and raised for that class of purposes. The power of the Commissioners Court to levy, for any such class of purposes, the maximum prescribed rate therefor, and to expend therefor all amounts so derived is, of course, clear and unquestionable; but when the levy is made at less than such maximum rate the difference, or deficit, can not be made up by transfer from another such constitutional fund.

Moreover, in this instance the attempted transfer of money was not from a fund raised for "streets . . . and other permanent improvements," but was from the general fund for "county purposes," which is an entirely distinct and different fund, and which, as we have attempted to show, can not be applied, lawfully, on roads and bridges.

Taxes levied ostensibly for any specific purpose or class of purposes designated in section 9 of article 8, *supra,* must be applied thereunto, in good faith; and in no event and under no circumstances may there be expended, legally, for one such purpose or class of purposes, tax money in excess of the amount raised by taxation declaredly for that particular purpose or class of purposes. But this rule would not prevent the proper expenditure, for such purpose or purposes, of any unexpended balance in the corresponding fund brought over from any previous year or years.

Defendants in error complain, further, because numerous holders of outstanding warrants drawn against the road and bridge fund were not made parties; but they were neither necessary nor proper parties to the action for injunction.

The judgment of the Court of Civil Appeals is in part affirmed and in part reversed, in accordance with our views as hereinabove set forth, and the judgment of the District Court is affirmed.

*Reversed in part and judgment of District Court affirmed.*