

# THE ATTORNEY GENERAL
# OF TEXAS

GROVER SELLERS

ATTORNEY GENERAL

AUSTIN 11, TEXAS

*Au H-194*

Overruled by C-612

Honorable John W. Crudgington
County Auditor
Potter County
Amarillo, Texas

Dear Sir:

Opinion No. O-6805
Re: Use of the surplus in
the Road and Bridge Fund.

Your request for an opinion from this department is as follows:

"House Bill 850, listed in Vernon's Texas Session Laws of the 49th Legislature, states that any county which does not levy a road and bridge tax, and has a surplus in its R. & B. Fund, may use the surplus as it sees fit.

"Article 6675a 10 provides that all monies received by the county from the registration fees on motor vehicles shall be used for the construction and maintenance of lateral roads of the county.

"Since Potter County has a low mileage of lateral roads it levies no road tax and has an accruing yearly surplus from the proceeds of fines and registration of motor vehicles.

"Is it within the discretion of the Commissioners' Court to use the surplus in its R. & B. Fund under the prevailing statutes?"

Article 6675a-10, V.A.C.S., is as follows:

"Apportionment of funds. - On Monday of each week each County Tax Collector shall deposit in the County Depository of his county to the credit of the County Road and Bridge Fund an amount equal to one hundred (100%) per cent of net collections made hereunder during the preceding week until the amount so deposited for the current calendar year shall have reached a total sum of Fifty Thousand ($50,000.00) Dollars

"Thereafter, and until the amount so deposited for the year shall have reached a total of One Hundred Seventy-Five Thousand ($175,000.00) Dollars, he shall deposit to the credit of said Fund on Monday of each week an amount equal to fifty (50%) per cent of collections made hereunder during the preceding week.

"Thereafter, he shall make no further deposits to the credit of said Fund during that calendar year. All collections made during any week under the provisions of this Act (Arts. 6675a-1 to 6675a-14; P.C. Art. 879a) in excess of the amounts required to be deposited to the credit of the Road and

Bridge Fund of his county shall be remitted by each County Tax Collector on each Monday of the succeeding week to the State Highway Department together with carbon copies of each license receipt issued hereunder during the preceding week. He shall also on Monday of each week remit to the Department as now provided by law, all transfer fees and chauffeurs' license fees collected by him during the preceding week, together with carbon copies of all receipts issued for said fees during the week.

"He shall also accompany all remittances to the Highway Department with a complete report of such collections made and disposition made thereof the form and contents of the said report to be prescribed by the State Highway Department. None of the monies so placed to the credit of the Road and Bridge Fund of a county shall be used to pay the salary or compensation of any County Judge or County Commissioner, but all said monies shall be used for the construction and maintenance of lateral roads in such county under the supervision of the County Engineer, if there be one, and if there is no such engineer, then the County Commissioners' Court shall have authority to command the services of the Division Engineer of the State Highway Department for the purpose of supervising the construction and surveying of lateral roads in their respective counties. All funds allocated to the counties by the provisions of this Act (Arts. 6675a-1 to 6675a-14; P. C. Art. 807a) may be used by the counties in the payment of obligations, if any, issued and incurred in the construction or the improvement of all roads; including State Highways of such counties and districts therein; or the improvement of the roads comprising the County Road System."

The above mentioned statute expressly provides how motor registration fees coming into the County shall be expended. It also provides that such fees be placed in the Road and Bridge Fund of the County.

House Bill 850, 49th Legislature, provides as follows:

"Sec. 1. In all counties of this State having surplus funds from revenues derived from motor vehicle registration fees which each said county is authorized to retain under the laws of the State of Texas, and where any such county or counties are not levying a tax for the building and maintenance of roads and bridges for such county or counties, the Commissioners' Court of said county or counties is hereby authorized to transfer such surplus funds to any other county fund or funds which such Court may from time to time designate, and to expend such surplus funds for any other use or purpose.

"Sec. 2. The fact that some counties with large populations have only a relatively small number of miles of county roads to maintain and are now annually collecting and retaining motor registration fees in an aggregate amount several times as large as is necessary to sufficiently maintain the roads and bridges in such counties creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and said Rule is hereby

suspended, and that this Act shall take effect and be in force from and after its passage, and it is so enacted."

Section 9 of Article 8 of our State Constitution prescribes the maximum rate of taxes for general purposes, for roads and bridges, for juries, and for permanent improvements, respectively. This department has repeatedly held that the Commissioners' Court has no authority to transfer money from one constitutional fund to another, or to expend for one purpose, tax money raised ostensibly for another purpose. Such rulings are based on the following authorities: Carroll v. Williams, 202 S.W. 504; Ault v. Hill County, 116 S.W. 359; Henderson v. Bock, 262 S.W. 94; 11 Texas Jurisprudence, p. 609-611.

We quote the following language from Carroll v. Williams, supra:

"Going to the real gist of the main issue before us, section 9 of article 8 of out state Constitution, supra, inhibits any and all transfers of tax money from one to another of the several classes of funds therein authorized, and, as a sequence, the expenditure, for one purpose therein defined, of tax money raised ostensibly for another such purpose. The immediate purpose in so prescribing a separate maximum tax rate for each of the classes of purposes there enumerated is, no doubt, to limit, accordingly, the amount of taxes which may be raised from the people, by taxation, declaredly for those several purposes or classes of purposes, respectively. But that is not all. The ultimate and practical and obvious design and purpose and legal effect is to inhibit excessive expenditures for any such purpos- or class of purposes. By necessary implication, said provisions of section 9 of article 8 were designed, not merely to limit the tax rate for certain therein designated purposes, but to require that any and all money raised by taxation for any such purpose shall be applied, faithfully, to that particular purpose, as needed therefor, and not to any other purpose or use whatsoever. . . .

"True, the Constitution does not say, in so may words, that money raised by a county, city, or town, by taxation for one such purpose shall never be expended for any other purpose -- not even for another of the five general classes of purposes defined and approved in said section 9 -- but that we think, is its plain and certain meaning and legal effect. The very definitions of those several classes of purposes, and the declaration of authority to tax the people therefor, respectively, coupled, as they are, in each instance, with a limitation of the tax rate for that class, must have been predicated upon the expectation and intent that, as a matter of common honesty and fair dealing, tax money taken from the people ostensibly for any such specified purpose shall be expended, as needed, for that purpose alone, as well as that the tax rate for that particular class, in any one year, shall not exceed the prescribed maximum.

"Conversely, and upon a like course of reasoning, it must have been intended that expenditures for any such designated purpose shall never include tax money in excess of the proceeds of the maximum tax rate prescribed by the Constitution for that purpose.

"Unless our above-stated conclusions are sound, there was no good reason for making the constitutional limitation upon the said five separate designated tax rates specific; the limitation upon the taxing power might as well have been couched in general terms applicable to all the designated purposes collectively, although prescribing an aggregate maximum tax rate applicable to any and all such purposes in the discretion of governing body. In other words, unless said constitutional provisions were designed to limit the application or expenditure of each such tax fund for the specific purpose or purposes for which, declaredly, it is raised, as well as to limit the tax rate therefor, the same result in the way of protecting the people against exhorbitant taxes could have been attained more simply and more conveniently by making, in said section 9 of article 8, one general limitation upon the taxing power with reference to all five such classes of purposes, collectively, thereby leaving the governing body free to apply any and all such funds according to its own judgment, provided only that no portion thereof shall be applied to any extraneous purpose, not included by the terms of that section."

It will be noted from the above language of the Supreme Court that the transfer of the constitutional funds was prohibited because such funds were derived from taxes levied ostensibly for one pupose as authorized by the Constitution and used for another purpose. The Legislature, by enacting House Bill No. 850, supra, does not authorize a transfer of constitutional funds, but it merely authorizes a transfer of monies in the Road and Bridge Fund acquired by virtue of Article 6675a-10. Since the Legislature permitted the money derived from motor vehicle registration fees to be put in the Road and Bridge Fund in the first place, it can now permit the same money to be taken out of the Road and Bridge Fund and transferred to any other county fund or funds which the Commissioners' Court may designate.

It is therefore the opinion of this department that it is within the discretion of the Commissioners' Court to use the surplus in the Road and Bridge Fund derived from motor vehicle registration fees, provided that Potter County now levies no tax for the building and maintenance of roads and bridges for the county.

Section 24 of Article 16 of our State Constitution states:

"The Legislature shall make provision for laying out and working public roads, for the building of bridges, and for utilizing fines, forfeitures, and convict labor to all these purposes."

In view of the foregoing constitutional provision it is further our opinion that money now in the Road and Bridge Fund derived from fines and forfeitures cannot be transferred. To hold otherwise would not be in accord with the above quoted constitutional provision which makes it mandatory that such money be used on roads and bridges.

APPROVED SEP 18, 1945
/s/ Grover Sellers
ATTORNEY GENERAL OF TEXAS
JR:mp:egw

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ J. C. Davis, Jr.
Assistant
By s/s John Reeves
Assistant