

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

July 9, 1948

Hon. S. B. Buchanan, Jr.    Opinion No. V-628
County Attorney
Val Verde County    Re: Authority of Commis-
Del Rio, Texas       sioners' Courts to
                     contribute to build-
                     ing a swimming pool
                     in co-operation with
                     a city and the fund
                     usable for the pur-
                     pose.

Dear Sir:

We refer to your letter of June 8, 1948, in which you ask:

"Does the Commissioners' Court have authority to build a swimming pool, in co-operation with the City of Del Rio, Texas, upon land to be acquired or which has been previously acquired for public park pur-poses?

"Does the Commissioners' Court have the authority to expend funds from the Permanent Improvement Fund and/or the Road Fund for such purpose?"

You add:

"The Commissioners' Court of Val Verde County does not wish to levy and collect a tax as provided in Section 2, hereinabove quoted, for the purpose of acquiring and im-proving such a park and while the Permanent Improvement Fund of the County might be used for such purpose, same being an improvement of a public nature, it is my opinion said Court would not be authorized to expend funds from the Road and Bridge Funds for such pur-pose without express Statutory authority. No Statute authorizing an expenditure from the Road and Bridge Fund for such a purpose has been found."

No question concerning the issuance of bonds or time warrants is involved in your inquiry.

The factual situation is stated in your letter as follows:

"The Commissioners of the City of Del Rio have asked the cooperation of the County of Val Verde in the building of a swimming pool either upon land now held for public park purposes or to be acquired for such purposes."

We assume that the land on which the park is located belongs to Val Verde County or is owned or will be acquired jointly by said County and the City of Del Rio, and that the swimming pool will be paid for with current funds.

Sections 1 and 3 of Article 6081e of Vernon's Civil Statutes reads:

"Sec. 1.  That any county or any incorporated city of this State, either independently or in cooperation with each other, or with the Texas State Parks Board, may acquire by gift or purchase or by condemnation proceedings, lands to be used for public parks and playgrounds, such lands to be situated in any locality in this State and in any sized tracts deemed suitable by the governing body of the city or county acquiring same; provided, however, that lands to be acquired by any such city or county for said purposes may be, in the discretion of the governing body thereof, situated within the State, either within or without the boundary limits of such city, but within the boundary limits of said county, and within the limits of said county wherein said city lies or is situated."  (Emphasis added throughout)

"Sec. 3.  All parks acquired by authority of this Act shall be under the control and management of the city or county acquiring same or by the city and county jointly, where they have acted jointly in acquiring same, provided that the Commissioners' Court

and the City Commission or City Council may, by agreement with the State Parks Board, turn the land over to the State Parks Board to be operated as a public park, the expense of the improvement and the operation of such park to be paid by the county and/or city, according to the agreement to be made between such municipalities and the State Parks Board."

Section 1 of Article 6081e authorizes any county or incorporated city in this State, either independently or in cooperation with each other to acquire land for use as parks and playgrounds. Section 3 of said Article authorizes counties and/or cities to pay the expense of improving such parks. No citation of authority is necessary to support the proposition that a swimming pool is a permanent improvement of a park.

Opinion No. V-284 of the Attorney General pertained to a county park acquired under Article 6078, and the constitutional funds which may be used to purchase, improve and operate public parks. In that regard the pertinent part of said opinion reads:

"Article 6078 authorizes the tax upon a vote of a two-thirds majority, for the purchase and improvement of lands for use as county parks. It is obvious that this tax would come out of the constitutional permanent improvement tax (Article VIII, Sec. 9). The purpose as set forth in the proposition submitted to the voters specified a different purpose, to-wit: constructing, maintaining and operating public parks. The operating or current expenses of a county park would, in our opinion, be payable out of the general fund of the county rather than the permanent improvement fund. It is evident, therefore, that a constitutional tax, other than the one covered by Article 6078, was attempted to be authorized at the election held on May 18, 1946. You are, therefore, advised that it is the opinion of this department that the qualified property taxpaying voters of Yoakum County did not authorize the tax for the purchase and improvement

of lands for use as county parks, within
the contemplation of Article 6078 at the
election held on that date. It, there-
fore, becomes unnecessary to determine
whether the legal requirements relating
to the posting of notices, the conduct of
the election, the canvassing of the re-
turns, etc., were met.

"This department has heretofore de-
termined that the construction of a swim-
ming pool is a park improvement under Ar-
ticle 6078. See copies of Opinions Num-
bers O-2594 and O-7319. These opinions
hold that time warrants may be issued
against the tax mentioned in Article 6078
if such tax is authorized within the terms
of that article. Lasater v. Lopez, 217
S.W. 373; Adams v. McGill, 146 S.W. (2)
332 (W. E. Ref.).

"You are, therefore, advised that if
Yoakum County authorizes the tax in accord-
ance with the provisions of Article 6078,
time warrants may be issued against such
tax for park improvement purposes, which
improvement would consist of the construc-
tion of swimming pools and bathhouses in
the county parks of Yoakum County."

We adhere to that opinion and hold that a swim-
ming pool in a public park is a permanent improvement
which may only be paid for by a county with money of its
permanent improvement fund and that the operating expenses
thereof may only be paid with money of its general fund
whether the park be owned by such county independently un-
der Article 6078 or in cooperation with a city under Arti-
cle 6081e.

In the case of Carroll v. Williams, 109 Tex. 155,
202 S.W. 504, the Supreme Court of Texas said:

"Taxes levied ostensibly for any spec-
ific purpose or class of purposes designated
in section 9 of article 8, supra, must be
applied thereunto, in good faith; and in no
event and under no circumstances may there
be expended, legally, for one such purpose
or class of purposes, tax money in excess

of the amount raised by taxation declared-
ly for that particular purpose or class of
purposes.  But this rule would not prevent
the proper expenditure, for such purpose
or purposes, of any unexpended balance in
the corresponding fund brought over from
any previous year or years."

The Commissioners' Court of Val Verde County
may not use money obtained by taxation for its Road and
Bridge Fund in building a swimming pool in a public park.

## SUMMARY

The Commissioners' Court of Val Verde
County may build a swimming pool in a public
park owned by the county, or, in cooperation
with the City of Del Rio, in a public park
jointly owned by said county and city.  Art.
6081e, V. C. S.

Said Court may build or participate in
building such a swimming pool and expend
money from its permanent improvement fund for
such purpose, but may not expend money rais-
ed for the county Road and Bridge Fund for
such purpose.  Const. Art. VIII, Sect. 9.
Carroll v. Williams, 109 Tex. 155, 202 S. W.
504.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *W. T. Williams*

W. T. Williams
Assistant

WTW:wb

APPROVED:

*Fagan Dickson*

FIRST ASSISTANT
ATTORNEY GENERAL