

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 19, 1951

Hon. Jim W. Weatherby   Opinion No. V-1381
District Attorney
Kerrville, Texas      Re: Legality of using the
                     proceeds of a county
                     tax levied for airport
                     maintenance when the
                     county has relinquished
                     to a municipality its
                     interest in the airport
Dear Sir:             in question.

     Your request for an opinion of this office
reads in part as follows:

     "In 1941 the City of Kerrville and
Kerr County, Texas acquired land and con-
structed an airport; thereafter, the op-
eration of the airport was under the City
of Kerrville.

     "In 1943 Kerr County paid one-half
of the expense of additional hangars on
such airport.

     "In September of 1946, Kerr County
relinquished to the City of Kerrville all
right to participate in the upkeep, opera-
tion and control, with the understanding
that the City of Kerrville would be re-
sponsible thereafter for all expenses in-
curred in the operation, upkeep, manage-
ment and control thereof, without any de-
mand against Kerr County.

     "In 1950 the tax was levied for air-
port maintenance.

     "All taxes were paid without protest
and no claim, demand or protest was made
as to the payment of such five cent levy
for airport maintenance.

     "The City of Kerrville requested
the County to contribute money for up-
keep expenses. The tax collected is in

a special fund set aside for airport maintenance.

"In view of the relinquishment by Kerr County of its rights, and acceptance by the City of Kerrville, it is requested that you advise:

"1. Whether or not this money could be used by Kerr County as a contribution toward the upkeep maintenance of such airport.

"2. If the above question is answered in the negative, then whether or not such money could be expended by Kerr County.

"3. If such money can be expended by Kerr County, what may it be expended for.

"4. If such money can be expended by Kerr County, may it be used in its General Fund."

The pertinent part of Section 9, Article VIII of the Texas Constitution is as follows:

". . . and no county, city or town shall levy more than twenty-five (25) cents for city or county purposes, and not exceeding fifteen (15) cents for roads and bridges, and not exceeding fifteen (15) cents to pay jurors, on the one hundred dollars valuation, except for the payment of debts incurred prior to the adoption of the Amendment September 25, 1883; and for the erection of public buildings, streets, sewers, waterworks and other permanent improvements, not to exceed twenty-five (25) cents on the one hundred dollars valuation, in any one year, and except as is in this Constitution otherwise provided . . ."

Section 4 of Article 1269h, V.C.S., provides:

"That in addition to and exclusive
of any taxes which may be levied for the
interest and sinking fund of any bonds
issued under the authority of this Act,
the governing body of any city or the
Commissioners' Court of any county, fall-
ing within the terms hereof, may and is
hereby empowered to levy and collect a
special tax not to exceed for any one
year five cents on each One Hundred Dol-
lars for the purpose of improving, oper-
ating, maintaining and conducting any
Air Port which such city or county may
acquire under the provision of this Act,
and to provide all suitable structures,
and facilities therein.  Provided that
nothing in this Act shall be construed as
authorizing any city or county to exceed
the limits of indebtedness placed upon it
under the Constitution."

The order of the Commissioners' Court of
Kerr County reflects that the tax was levied for "air-
port maintenance", which is ordinarily an expense pay-
able out of the county general fund.  However, the
County Judge has advised that it was levied for the
specific purpose of improving the runways of the air-
port.  In this event, the tax becomes a part of the
permanent improvement fund.  In Attorney General's
Opinion O-6762 (1945) it is stated:

"From the information given in your
letter, we understand that a part of the
contemplated expenses in connection with
the airport is for the improvement of the
runways.  It is apparent that the runways
and the improvements thereto are in the
nature of permanent improvements.  We think,
therefore, that the expenses for the im-
provement of the runways should be allocated
as a part of the total levy authorized by
the Constitution for permanent improvements,
but in no event should such allocation have
the effect of increasing the total county
levy for permanent improvements beyond the
constitutional limit for such purposes."

In view of the foregoing, and assuming the

tax was, in fact, levied for runway improvements, it is our opinion that the money in question is a part of the permanent improvement fund of the county.

In Carroll v. Williams, 109 Tex. 155, 202 S.W. 504, 506, 507 (1918), it is stated:

"Going to the real gist of the main issue before us, Section 9 of Article 8 of our state Constitution, supra, inhibits any and all transfers of tax money from one to another of the several classes of funds therein authorized, and, as a sequence, the expenditure, for one purpose therein defined, of tax money raised ostensibly for another such purpose. The immediate purpose in so prescribing a separate maximum tax rate for each of the classes of purposes there enumerated is, no doubt, to limit, accordingly, the amount of taxes which may be raised from the people, by taxation, declaredly for those several purposes or classes of purposes, respectively. But that is not all. The ultimate and practical and obvious design and purpose and legal effect is to inhibit excessive expenditures for any such purpose or class of purposes. By necessary implication said provisions of section 9 of article 8 were designed, not merely to limit the tax rate for certain therein designated purposes, but to require that any and all money raised by taxation for any such purpose shall be applied, faithfully, to that particular purpose, as needed therefor, and not to any other purpose or use whatsoever. Those constitutional provisions control, not only the raising, but also the application, of all such funds; and such is the legal effect of articles 2242 and 7357, supra, when properly construed and applied.

"True, the Constitution does not say, in so many words, that money raised by a county, city, or town, by taxation for one such purpose shall never be expended for any other purpose--not even for another of the five general classes of purposes defined and approved in said section 9--but that, we

think, is its plain and certain meaning and legal effect. The very definitions of those several classes of purposes, and the declaration of authority to tax the people therefor, respectively, coupled, as they are, in each instance, with a limitation of the tax rate for that class, must have been predicated upon the expectation and intent that, as a matter of common honesty and fair dealing, tax money taken from the people ostensibly for one such specified purpose shall be expended, as needed, for that purpose alone, as well as that the tax rate for that particular class, in any one year, shall not exceed the prescribed maximum."

Based upon the assumption that the tax was levied for runway improvements, it is our opinion that the only purpose for which this money may be expended is for repairing and improving the airport.

The decisions of the Texas courts have repeatedly held that the commissioners' court is a court of limited jurisdiction and has only such powers as are conferred upon it, either by express terms or by necessary implication, by the Constitution and statutes of this State. Childress County v. State, 127 Tex. 343, 92 S.W.2d 1011 (1936); Von Rosenberg v. Lovett, 173 S.W. 508 (Tex. Civ. App. 1915, error ref.); Roper v. Hall, 280 S.W. 289 (Tex. Civ. App. 1925); Art. 2351, V.C.S.; 11 Tex. Jur. 632, Counties, Sec. 95.

There is no law which authorizes a county to relinquish the operation of an airport to a city. The only related provision at the time of this purported relinquishment was that which authorized the commissioners' court to lease a county-owned airport to any city within the county. Art. 1269h, V.C.S. There is no law authorizing a county to contribute money to a city for the operation of an airport. However, Article 46d-14, V.C.S., authorizes the joint operation of an airport by a county and city. This act provides that a joint board shall be created and prescribes the method of operation by such board. There is nothing in your request indicating that the

procedure outlined in Article 46d-14, V.C.S., has been followed.

In view of the foregoing, it is our opinion that Article 46d-14 must be complied with before county money may be expended in the operation of a joint airport.

## SUMMARY

Money collected by a county for airport maintenance cannot be contributed to a city to be used in the maintenance of an airport. Childress County v. State, 127 Tex. 343, 92 S.W.2d 1011 (1936); Von Rosenberg v. Lovett, 173 S.W. 508 (Tex. Civ. App. 1915, error ref.).

Money collected by a county through the levy of taxes for the purpose of improving the runways of the county airport is a part of the permanent improvement fund and can be spent only for such purpose. Att'y Gen. Op. O-6762 (1945); Carroll v. Williams, 109 Tex. 155, 202 S.W. 504 (1918).

Yours very truly,

PRICE DANIEL
Attorney General

By Bruce Allen
Bruce Allen
Assistant

APPROVED:

J. C. Davis, Jr.
County Affairs Division

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

BA:mh