

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

August 29, 1962

This Opinion
Modifies Opinion
#WW-1382

Honorable Dean Martin
County Attorney
Grayson County
Courthouse
Sherman, Texas

Opinion No. WW-1428

Re: Whether Article 1109k of
Vernon's Civil Statutes is
constitutional, and whether
disbursements may be made
from the Permanent Improve-
ment Fund for the construc-
tion of water control and
soil conservation structures,
and related questions.

Dear Mr. Martin:

We are in receipt of your letter of August 9, 1962,
requesting a re-consideration of our Opinion No. WW-1382.
The holding of that opinion was as follows:

"Since Grayson County has not complied
with the provisions of Article 7048a of
Vernon's Civil Statutes, there are no exist-
ing funds that may be expended for the purchase
of land or maintenance of water control and
soil conservation structures constructed by
the U. S. Department of Agriculture Soil Conser-
vation Service.

"If the County Auditor approves illegal
and unauthorized disbursements drawn on exist-
ing county funds, he and the sureties on his
bond are liable for the amounts illegally ex-
pended."

In the course of our opinion we stated the following:

"Subsequent to the release of the above
cited opinions /WW-595 and WW-596/ the Legis-
lature passed Article 1109k, and in Section 3
of said statute specifically authorized the dis-
bursement of Permanent Improvement Funds for
carrying out the purposes of the Act. However,
an inspection of that statute leads us to the
conclusion that its provisions were to apply
when a soil conservation district, water control
and improvement district, or drainage district

had been created. No such district having
been created in Grayson County, it follows
that the provisions of Article 1109k do not
apply. For the above stated reasons Article
1581e is likewise inapplicable."

This statement was premised on the assumption that no
soil conservation district, water control and improvement
district or drainage district was involved in your contract.
Your last letter presents to us additional information stated
by you as follows:

"The contract in question was entered into
between the Upper Elm Red Soil Conservation Dis-
trict; the Collin County Soil Conservation Dis-
trict; the Choctaw Watershed Water Improvement
District, which is a water control and improvement
district, created by H.B. 156, 56th Leg., (as
amended, H.B. 999) approved March 24, 1959; and
the Grayson County Commissioners Court. A copy
of this contract is attached hereto for your in-
formation.

"In view of the statements made in paragraph
1, page 4 of your opinion, it was felt that you
did not know these facts."

You then ask the following additional questions:

"1.   Is Article 1109k of the Revised Civil
Statutes of the State of Texas Constitutional and
valid?

"2.   If your answer to Question No. 1 is 'yes,'
can Grayson County legally expend money under Arti-
cle 1109k in fulfillment of its contract with the
other parties involved out of its Permanent Improve-
ment Funds?

"3.   If your answer to Question No. 2 is 'no'
then in what particular have the parties involved
failed to comply with Article 1109k?"

Section 9 of Article VIII of the Constitution of Texas
states as follows:

"The State tax on property, exclusive of
the tax necessary to pay the public debt, and of

the taxes provided for the benefit of the public free schools, shall never exceed thirty-five (35) cents on the one hundred dollars valuation; and no county, city or town shall levy more than twenty-five (25) cents for city or county purposes, and not exceeding fifteen (15) cents for roads and bridges, and not exceeding fifteen (15) cents to pay jurors, on the one hundred dollars valuation, except for the payment of debts incurred prior to the adoption of the Amendment September 25, 1883; and for the erection of public buildings, streets, sewers, waterworks and other permanent improvements, not to exceed twenty-five (25) cents on the one hundred dollars valuation, in any one year, and except as is in this Constitution otherwise provided; . . ." (Emphasis added).

Article 1109k of Vernon's Civil Statutes states as follows:

"Section 1. All counties, cities, water control and improvement districts, drainage districts and other political subdivisions in the State of Texas are authorized to enter into contracts with soil conservation districts for the joint acquisition of right-of-ways or joint construction or maintenance of dams, flood detention structures, canals, drains, levees and other improvements for flood control and drainage as related to flood control, and for making the necessary outlets and maintaining them; and providing further that such contracts and agreements shall contain such terms, provisions and details as the governing bodies of the respective political subdivisions determine to be necessary under all facts and circumstances.

"Sec. 2. All counties, cities, water control and improvements districts, drainage districts and other political subdivisions in the State of Texas may contribute funds to soil conservation districts for construction or maintenance of canals, dams, flood detention structures, drains, levees and other improvements for flood control and drainage as related to flood control and for making

the necessary outlets and maintaining them regardless of whether the title to such properties is vested in the State of Texas, or a soil conservation district, so long as the work to be accomplished is for the mutual benefit of the donor and the agency or political subdivision having title to such property on which the improvements are located.

"Sec. 3. All counties in the State of Texas are authorized to expend Permanent Improvement Funds for carrying out the purposes of this Act and in addition thereto such counties may also expend Flood Control Funds levied pursuant to Section 1a of Article VIII of the Constitution of Texas and Article 7048a of Vernon's Civil Statutes for the purposes of this Act; providing that cities, water control and improvement districts, drainage districts and other political subdivisions may expend the appropriate funds of the various cities and political subdivisions for carrying out the purposes of this Act." (Emphasis added).

In the case of Carroll v. Williams, 109 Tex. 155, 202 S.W. 504 (1918), the Supreme Court stated at page 506:

". . . Going to the real gist of the main issue before us, section 9 of article 8 of our state Constitution, supra, inhibits any and all transfers of tax money from one to another of the several classes of funds therein authorized, and, as a sequence, the expenditure, for one purpose therein defined, of tax money raised ostensibly for another such purpose. The immediate purpose in so prescribing a separate maximum tax rate for each of the classes of purposes there enumerated is, no doubt, to limit, accordingly, the amount of taxes which may be raised from the people, by taxation, declaredly for those several purposes or classes of purposes, respectively. But that is not all. The ultimate and practical and obvious design and purpose and legal effect is to inhibit excessive expenditures for any such purpose or classes of purposes. By necessary implication said provisions of section 9 of article

8 were designed, not merely to limit the tax rate for certain therein designated purposes, but to require that any and all money raised by taxation for any such purpose shall be applied, faithfully, to that particular purpose, as needed therefor, and not to any other purpose or use whatsoever. Those constitutional provisions control, not only the raising, but also the application of all such funds; and such is the legal effect of articles 2242 and 7357, supra, when properly constructed and applied." (Emphasis added).

From the language of the Carroll opinion, it can be seen that no disbursements may be made under any circumstances from the Permanent Improvement Fund except for permanent improvements themselves.

We do not consider Article 1109k to be an inroad on Section 9 of Article VIII of the Constitution, provided, of course, that the disbursements made under the authority of this statute go only for the erection of permanent improvements. We therefore hold that Article 1109k is constitutional, and that the Commissioners' Court is authorized to make disbursements for permanent improvements.

We respectfully call your attention to the fact that not all expenditures relating to water control or soil conservation structures involve permanent improvements. Opinion No. O-37 (1939) held that expenditures for legal services and filing fee expenses do not come within the term "erection," and consequently were not expenses of "erection" of a permanent improvement. Opinion No. O-629 (1939) held that disbursements could not be made from the Permanent Improvement Fund for the construction and maintenance of drainage ditches. Opinion No. O-5422 (1943) held that funds collected as a permanent improvement tax could not be legally expended for the purpose of buying right-of-way for public roads. Our Opinion No. WW-596 (1959) held that disbursements could not be made for the maintenance of projects constructed by the Soil Conservation Service. These same principles apply to the contract entered into by your Commissioners' Court.

Accordingly, in the light of our discussion above, Opinion No. WW-1382 is hereby modified to the extent that amounts may be disbursed from the Permanent Improvement Fund if they are used "for the erection of public buildings, streets,

sewers, waterworks and other permanent improvements." The County Auditor is only liable for amounts disbursed for purposes which do not constitute permanent improvements.

## SUMMARY

Article 1109k of Vernon's Civil Statutes is constitutional insofar as it authorizes disbursements from the Permanent Improvement Fund for the erection of permanent improvements. The Commissioners' Court of Grayson County may, by authority of Article 1109k, make disbursements from the Permanent Improvement Fund for permanent improvements in connection with the construction of water control and soil conservation structures.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Fred D. Ward
Assistant

FDW:wb:ms

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman

Scranton Jones
Dudley McCalla
Sam Stone
Tom Hunter

REVIEWED FOR THE ATTORNEY GENERAL
By: Leonard Passmore