# THE ATTORNEY GENERAL
## OF TEXAS
GERALD C. MANN        AUSTIN 11, TEXAS
XXIIXXXXXXSOXXXXXXXXXXXXXXXX


Honorable R. V. Rayford
County Auditor
Rusk County
Henderson, Texas

Dear Sir:          Opinion No. 0-3211
                Re:  Purchase of land for airport out
                     of county general fund.

Reference is made to your letter of February 23, 1941, requesting the opinion of this Department upon the following question:

"Does the Commissioners' Court have the authority under Section 15 of R.C.S. 2351, Powers and Duties of Commissioners' Court, and Art. 1269h R.C.S. to purchase up to 640 acres of land for an airport in Rusk County, out of the current general fund revenues or is it mandatory for the court to call an election and issue bonds to pay for this tract of land if the election carries.

"We are going under the fact that the county has the money in the general fund and is able to pay for the 640 acres."

Article 1269h, Vernon's Annotated Civil Statutes, reads as follows:

"Sec. 1.  That the governing body of any incorporated city in this State may receive through gift or dedication, and is hereby empowered to acquire by purchase, without condemnation or by purchase through condemnation proceedings, and thereafter maintain and operate as an Air port tracts of land, either within or without the corporate limits of such city and within the county in which such city is situated, the land acquired and held by any such city never to at any one time exceed six hundred forty acres, and the Commissioners' Court of any county may likewise acquire, maintain and operate for like purpose tracts of land within the limits of the county, not to exceed at any one time six hundred forty acres.

"Sec. 2.  For the purpose of condemning or
purchasing either or both, lands to be used and
maintained as provided in S$_e$ction 1 hereof, and
improving and equipping the same for such use,
the governing body of any city or the Commissioners'
Court of any county, falling within the terms of
such Section, may issue negotiable bonds of the
city or of the county, as the case may be, and
levy taxes to provide for the interest and sink-
ing funds of any such bonds so issued, the author-
ity hereby given for the issuance of such bonds
and levy and collection of such taxes to be exer-
cised  in accordance with the provisions of Chapter
1 of Title 22 of the Revised Civil Statutes of 1925.

"Sec. 3.  Any Air Port acquired under and by
virtue of the terms of this Act (art. 1269h.)
shall be under the management and control of the
governing body of the city or the Commissioners'
Court of the county acquiring the same, which is
hereby expressly  authorized and empowered to im-
prove, maintain and conduct the same as an Air
Port, and for that purpose to make and provide
therein all necessary or fit improvements and
facilities and to fix such reasonable charges
for the use thereof as such governing body or
Commissioners' Court shall deem fit, and to make
rules and regulations governing the use thereof.
All proceeds from such charges shall be devoted
exclusively to the maintenance, up-keep, improve-
ment and operation of such Air Port and the fa-
cilities, structures, and improvements therein,
and no city or county shall be liable for in-
juries to persons resulting from or caused by
any defective, unsound or unsafe condition of
any such Air Port, or any part thereof, or thing
of any character therein or resulting from or
caused by any negligence, want of skill, or lack
of care on the part of any governing Board or
Commissioners' Court, officer, agent, servant or
employee or other person with reference to the
construction, improvement, management, conduct,
or maintenance of any such Air Port or any struc-
ture, improvement, or thing of any character what-
ever, located therein or connected therewith.

"Sec. 4.  That in addition to and exclusive
of any taxes which may be levied for the interest
and sinking fund of any bonds issued under the
authority of this Act (Art. 1269h.) the govern-

ing body of any city or the Commissioners' Court of any county, falling within the terms hereof, may and is hereby empowered to levy and collect a special tax not to exceed for any one year five cents on each One Hundred Dollars for the purpose of improving, operating, maintaining and conducting any Air Port which such city or county may acquire under the provision of this Act (A$^R$t. 1269h.), and to provide all suitable structures, and factilities therein. Provided that nothing in this Act (Art. 1269h.) shall be construed as authorizing any city or county to exceed the limits of indebtedness placed upon it under the Constitution."

Section 9 of Article 8 of our Constitution reads in part as follows:

"...and no county, city or town shall levy more than twenty-five cents for city or county purposes, and not exceeding fifteen cents for roads and bridges, and not exceeding fifteen cents to pay jurors, on the one hundred dollars valuation, except for the payment of debts incurred prior to the adoption of the amendment September 25, 1883; and for the erection of public buildings, streets, sewers, water works and other permanent improvements, not to exceed twenty-five cents on the hundred dollars valuation, in any one year, and except as is in this Constitution otherwise provided; and the Legislature may also authorize an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads: provided, that a majority of the qualified property taxpaying voters of the county voting at an election to be held for that purpose shall vote such tax, not to exceed fifteen cents on the one hundred dollars valuation of the property subject to taxation in such county. ....."

In Carroll vs. Williams, 109 Tex. 155, 202 S.W. 504, the Texas Supreme Court used the following language:

"Second. Going to the real gist of the main issue before us, section 9 of Article 8 of our state Constitution, supra, inhibits any and all transfers of tax money from one to another of the several classes of funds therein authorized, and, as a sequence, the expenditure, for one purpose therein defined, of tax money raised ostensibly for another such purpose. The immediate purpose in so pre -

scribing a separate maximum tax rate for each
of the classess of purposes there enumerated is,
no doubt, to limit, accordingly, the amount of
taxes which may be raised from the people, by
taxation, declaredly for those several purposes
or classes of purposes, respectively. But that
is not all. The ultimate and practical and
obvious design and purpose and legal effect is
to inhibit excessive expenditures for any such
purpose or class of purposes. By necessary im-
plication said provisions of section 9 of article
8 were designed, not merely to limit the tax rate
for certain therein designated purposes, but
to require that any and all money raised by tax-
ation for any such purpose shall be applied,
faithfully, to that particular purpose, as needed
therefor, and not to any other purpose or use
whatsoever. Those constitutional provisions con-
trol, not only the raising, but also the applica-
tion, of all such funds; and such is the legal
effect of articles 2242 and 7357, supra, when
properly construed and applied.

True, the Constitution does not say, in so
many words, that money raised by a county, city,
or  town, by taxation for one such purpose shall
never be expended for any other purpose---not even
for another of the five general classes of pur-
poses defined and approved in said section 9--
but that, we think, is its plain and certain mean-
ing and legal effect. The very definitions of those
several classes of purposes, and the declaration of
authority to tax the people therefor, respective-
ly, coupled, as they are, in each instance, with
a limitation of the tax rate for that class, must
have been predicated upon the expectation and intent
that, as a matter of common honesty and fair deal-
ing, tax money taken from the people ostensibly
for one such specified purpose shall be expended,
as needed, for that purpose alone, as well as that the
tax rate for that particular class, in any one
year, shall not exceed the prescribed maximum."

In Opinion No. 0-413 we were concerned with the au-
thority of the commissioners' court to purchase rights-of-way
out of moneys in the county general fund. We held general
fund moneys may not be so used; that under Section 9 of
Article 8 of the Constitution money for the purposes con-
templated must come from the Constitutional road and bridge
fund.

In our Opinion No. 0-3142 it appeared from the facts that the county had a surplus in the permanent improvement fund. It desired to use this money to purchase airport property under Article 1269h, supra. We held that since airport indebtedness would be a charge against the county permanent improvement fund, the county might, at its option, issue bonds or use a surplus existing in such permanent improvement fund.

You are accordingly advised that under the authorities cited revenues in one Constitutional fund may not be diverted for uses other than the purposes for which such taxes were levied; that while the county may use a surplus in the permanent improvement fund for the purchase of airport property under Article 1269h, supra, general fund revenues may not be diverted by the commissioners' court for such purposes.

Very truly yours

ATTORNEY GENERAL OF TEXAS


By s/James D. Smullen
James D. Smullen
Assistant

JDS:js:wc


APPROVED MARCH 25, 1941
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman