

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

Mar. 31, 1947

Hon. Ben J. Dean
District Attorney
Stephens County
Breckenridge, Texas

Opinion No. V-118
Re: Issuance of bonds by Ste-
phens County payable out
of Permanent Improvement
Taxes.

Dear Sir:

We have received your letter of March 15, 1947, relative to a certain contemplated hospital bond issue in the amount of $120,000. You state in your letter that "On August 25, 1945, by a proper vote of the citizens of Stephens County, the Constitutional Fund provided for under Section 9 of Article 8 of the Constitution was re-allocated as follows:

| | |
|---|---|
| Jury Fund | 5 cents on the $100 valuation |
| Road and Bridge Fund | 8 cents on the $100 valuation |
| General Fund | 38 cents on the $100 valuation |
| Permanent Improvement Fund | 3 cents on the $100 valuation |

You further state that the Commissioners' Court of Stephens County "has not entered its order issuing the Hospital Bonds, but contemplates doing so and they expect to pay the interest on such bonds until 1951 out of 3 cents now allocated to permanent improvement, and beginning with 1951 to start retiring the bonds. It is contemplated that at the time the order is entered they will provide for a tax sufficient to pay the interest and sinking fund on such Hospital Bonds."

You mention in your letter that there are certain court-house and jail refunding bonds now outstanding and that these are the only bonds which are payable out of the permanent improvement tax.

In connection with these facts you ask the following questions:

"1. Would this method of paying the bonds meet with the requirements of law and the election order?

"2. Since the order will provide for the levying and collecting of a sufficient tax to pay the interest and

sinking fund on these bonds, could any re-allocation election held hereafter under the provision of Section 9, Article 8 of the Constitution prevent the court from levying and collecting sufficient taxes to pay the Hospital Bonds? In other words, since the order would be entered with the thought that in 1951 the Permanent Improvement Fund would automatically revert to 25 cents on the $100.00 valuation, could any re-allocation election between now and said time in any way impair the order of the court so that the money could not be collected for these bonds?

"3. If said order of the Commissioners' Court of Stephens County, made in pursuance of this election, provides for the levying and collecting of taxes to pay the interest and sinking fund, would this authorize the Commissioners' Court to collect such taxes for such purposes, regardless of the fact that the re-allocation order now of record authorizes only 3 cents on the $100.00 valuation to be collected for permanent improvements.

"4. Would the Commissioners' Court be authorized to pay the interest on the Hospital Bonds as it accrued up until 1951 from the General Fund?

"5. Assuming that the provisions of the law with respect to the voting and issuance of such Hospital Bonds have been carried out, and the bonds were issued in the manner herein proposed, would the same meet with the approval of the Attorney General?"

Section 9 of Article VIII of the Constitution of Texas, as amended in November, 1944, authorizes the re-allocation of the Constitutional taxes upon a majority of the qualified property taxpaying voters of a county voting at an election for that purpose.

It is also provided that "such re-allocations and changes shall remain in force and effect for a period of six (6) years from the date of the election at which the same shall be approved, unless the same again shall have been changed by a majority vote of the qualified property taxpaying voters of such county, voting on the proposition, after submission by the Commissioners Court at a general or special election for that purpose."

It follows that for a period of six years from the date of the election the various constitutional tax limits are those specified in the election "unless the same again shall have been changed by a majority vote of the qualified property taxpaying voters of such county." In Stephens County the Permanent Improvement tax was re-allocated to an amount not to exceed 3¢ on the $100.00 valuation.

We have been advised by the Comptroller of Public Accounts that the assessed valuation of Stephens County, based upon the latest approved rolls, is $10,529,220. A 3¢ tax applied to this valuation would realize, even computed at 100% collection, only $3,158.76. The Constitution of Texas, in Section 6 of Article XI, provides that no debt for any purpose shall have been incurred in any manner by any city or county "unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon and provide at least 2% as a sinking fund."

You do not state what rate of interest it is proposed that the bonds are to bear, but it is assumed that such interest rate will be at least 1%. A 1% interest charged against $120,000 would amount to $1200. Add to this $1200 2% for the constitutional sinking fund ($2400) and the total amount is $3600. It is obvious, therefore, that the county does not have sufficient taxing power to meet the constitutional requirement. This conclusion is reached, even without considering the bonded indebtedness of the county already outstanding against its Permanent Improvement Fund. We might add, however, that in Opinion No. 0-6863 the proposition is clearly set forth that a county cannot by a re-allocation of taxes infringe upon an existing contract. A copy of Opinion No. 0-6863 is enclosed herewith for your consideration.

In view of the foregoing, you are advised that Stephens County is without sufficient taxing power to warrant the issuance of the contemplated bonds. As we have reached the conclusion that the bonds may not be issued, the answering of your specific questions is rendered unnecessary. You are advised, however, that in connection with Question No. 4, with respect to the payment of the interest on the bonds with moneys from the General Fund, the Commissioners' Court has no power to transfer moneys from the General Fund to the Permanent Improvement Fund, or to expend for permanent improvement purposes tax moneys which were raised for general purposes. 11 Tex. Jur. 609; Carroll v. Williams, 109 Tex. 155, 202 S. W. 504.

## SUMMARY

As Stephens County has re-allocated its taxes under the authority of Section 9, Article VIII, Constitution of Texas, whereby the permanent improvement tax was reduced to an amount not to exceed 3¢ on the $100.00 valuation, said county does not have sufficient taxing power to warrant the issuance of contemplated Hospital Bonds in the amount of $120,000. It follows that such

bonds may not be legally issued.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *George W. Sparks*
George W. Sparks
Assistant

GWS-s:sl

Enclosure

APPROVED APR 1, 1947

*Price Daniel*
ATTORNEY GENERAL OF TEXAS