

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

February 13, 1952

Hon. Murray H. Nance, Jr.
County Attorney
Grayson County
Sherman, Texas          Opinion No. V-1406

Re: Authority of the Commissioners'
Court to create a Social Security
Fund to contain annual advance
dedications for Social Security
matching contributions from the
County General Fund, the County
Road and Bridge Fund, and the
Dear Mr. Nance:          County Officers Salary Fund.

Your request for an opinion contains the following question:

"Would the County Auditor be authorized
to transfer now and at the beginning of each
fiscal year, an estimated amount into a fund
to be known as the Social Security Fund from
the County Road and Bridge Fund, the County
General Fund and the County Officers Salary
Fund, which are the funds from which County
employees are to be paid, in view of the fact
that no fund, known as the Social Security
Fund, has been previously set up?"

House Bill 603, Acts 52nd Leg., R.S. 1951,
ch. 500, p. 1480 (Article 695g, V.C.S.), provides in
part as follows:

"Sec. 2. The State Department of Public
Welfare is designated the State Agency to
administer the provisions of this Act. The
Executive Director of the department shall act
for it and shall direct and administer its
functions under this Act."

"Sec. 4. The State Agency is authorized
to enter into agreements with the governing
bodies of counties and with the governing

bodies of municipalities of the State which are eligible for Social Security coverage under Federal law when the governing body of any of said counties or municipalities desires to obtain coverage under the old-age and survivor's insurance program for their employees.  . . ."

"Sec. 5.  The State Board of Public Welfare is authorized and directed to promulgate all reasonable rules and regulations it deems necessary to govern applications for and eligibility to participate in this program, and it shall prescribe the terms of the agreements necessary to carry out the provisions of this Act and to insure financial responsibility on the part of the participating counties and municipalities.

"Sec. 6.  . . . The respective governing bodies are authorized to pay contributions as required by these agreements from those funds from which the covered employees receive their compensation, and it is expressly provided that all prior laws and parts of laws which fix a maximum compensation for any covered employees of counties are hereby amended to allow payment of the matching contribution necessary to this program in addition to any maximum compensation otherwise fixed by law."

"Sec. 7.  Each county and municipality of the State is authorized to submit for approval by the state agency a plan for extending the benefits of the Federal old-age and survivor's insurance system to employees of the county or municipality . . . no plan shall be approved unless it specified the source or sources from which the funds necessary to make the payments required are to be derived and contains guarantees that these sources will be adequate for this purpose (the State Agency may by appropriate rules and regulations require guarantees <u>in the form of surety bonds, advance payments into escrow, detailed representations and assurances of priority dedication, or any legal</u>

undertakings to create adequate security
that each county and municipality will be
financially responsible for its share in
this program for at least a minimum period
equivalent to that specified by Federal re-
quirements to precede coverage cancella-
tion. . . ." (Emphasis added.)

"Sec. 8. . . . Matching contributions
by the employing counties or municipalities
as prescribed by the approved plan in keep-
ing with Federal requirements shall be paid
from the respective sources of funds from
which covered employees receive their com-
pensation."

In compliance with Section 5 of House Bill
603, the Director of the State Board of Public Wel-
fare has promulgated certain rules and regulations
which he deems necessary to govern the applications
for and eligibility to participate in this program.
Rule 2352 provides:

"A special fund separate and apart
from all other public moneys shall be estab-
lished by the county or municipality to be
known as the 'Social Security Fund' and to
be administered by the county or municipality
exclusively for the purposes of the agree-
ment."

Under the authority of House Bill 603 and
Rule No. 2352 of the State Board of Public Welfare
governing Social Security, the commissioners' court
of Grayson County is authorized to set up an escrow
fund for the purpose of carrying out the purposes of
House Bill 603.

Under Section 8 of House Bill 603 matching
contributions by the employing counties are to be
paid from the respective sources of funds from which
covered employeed receive their compensation. The
sources of funds to pay for the county employees eli-
gible for participation under this plan are the Coun-
ty General Fund, the County Road and Bridge Fund, and
the County Officers Salary Fund.

Section 7 of House Bill 603 authorizes the
commissioners' court to transfer the funds from the

Hon. Murray H. Nance, Jr., page 4 (V-1406)

Officers Salary Fund, the Road and Bridge Fund and the County General Fund into the fund to be known as the Social Security Fund. The County Social Security Fund is an escrow fund set up or created for carrying out the purposes previously authorized for the funds from which the employees receive their compensation.

The commissioners' court of the county does not have the authority to transfer funds from one constitutional fund, such as the County Road and Bridge Fund, to another constitutional fund such as the County General Fund. Such a transfer would, in effect, expend funds raised by taxation ostensibly for one purpose for another purpose or class of purposes. Carroll v. Williams, 109 Tex. 155, 202 S.W. 504; Sanders v. Looney, 225 S.W. 280 (Tex. Civ. App. 1920). However, the commissioners' court by taking the funds from these constitutional funds and transferring them into the County Social Security Fund merely insures, by an escrow arrangement, the payment required under the Social Security plan. These payments would ordinarily be made from the funds which compensate the participating county employees and payment into escrow is but a means for fulfilling the requirements of Section 7 of House Bill 603. Therefore, it is our opinion that the commissioners' court of a county which desires to obtain coverage under the old-age and survivor's insurance program for their employees is authorized to create a Social Security Fund to contain advance dedications for Social Security matching contributions paid from the County General Fund, the County Road and Bridge Fund, and the County Officers Salary Fund.

SUMMARY

The commissioners' court of a county desiring to obtain coverage under the old age and survivor's insurance program for their employees is authorized to create an escrow fund (Social Security Fund) to contain annual advance dedications for Social Security matching contributions.

Hon. Murray H. Nance, Jr., page 5  (V-1406)

The commissioners' court is authorized to pay county matching contributions into the Social Security Fund from the respective sources of funds from which covered employees receive their compensation, viz. County General Fund, County Road and Bridge Fund, and the County Officers' Salary Fund.  House Bill 603, Acts 52nd Leg., R.S. 1951, ch. 500, p. 1480 (Art. 695g, V.C.S.).

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

J. C. Davis, Jr.
County Affairs Division

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

RHH:mh

By Robert H. Hughes

Robert H. Hughes
Assistant