

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 1, 1962

Honorable Mack Wallace
County Attorney
Henderson County
Athens, Texas

Opinion No. WW-1267

Re: Whether the Commissioners'
Court is authorized to pay
for the removal and re-
building of barns and
other buildings out of
the Special Road and
Bridge Fund.

Dear Mr. Wallace:

     In your letter requesting an opinion from this office you submit certain facts as follows:

     "The City of Athens proposes to trade a piece of land owned by them for a piece of land owned by the county. Incident to this trade the county will of necessity have to spend in the neighborhood of $14,000.00 rebuilding its barns which are located on the present county land. The Commissioners' Court proposes to pay for the removal of these barns and other buildings by spending money out of the Special Road and Bridge Fund." (Emphasis added)

     Also, during a telephone conversation with this office on January 29, 1962, you stated that the barns and other buildings, presently located on county owned land, are utilized to provide housing for county road trucks, machinery and equipment.

     In addition you stated that the voters of Henderson County have authorized a 15 cent tax, as is provided for by Section 9, Article VIII of the Texas Constitution, thereby creating a Special Road and Bridge Fund.

     With regard to the foregoing circumstances you ask a question which is substantially as follows:

     Whether the Commissioners' Court of Henderson County is authorized to pay for the removal and rebuilding of barns and other buildings out of the Special Road and

Bridge Fund.

Our discussion herein will be limited to the legality of the proposed expenditure of money out of the Special Road and Bridge Fund for the purposes mentioned above.

Article 2351, Vernon's Civil Statutes, lists certain powers and duties of a Commissioners' Court with regard to establishing and maintaining public roads and bridges. Those provisions most pertinent to our discussion are as follows:

"Each commissioners' court shall:

". . .

"3. Lay out and establish, change and discontinue public roads and highways.

"4. Build bridges and keep them in repair.

"5. Appoint road overseers and apportion hands.

"6. Exercise general control over all roads, highways, ferries and bridges in their counties.

". . .

"15. Said Court shall have all such other powers and jurisdiction and shall perform all such other duties, as are now or may hereafter be prescribed by law."

The voters of the County have enabled the Commissioners' Court to better perform the duties specified above by authorizing the 15 cent tax as is provided for by Section 9 of Article VIII of the Texas Constitution. This created a Special Road and Bridge Fund, as provided by the Constitution, thus making it a Constitutional Fund. Carrol v. Williams, 109 Tex. 155, 202 S.W. 504 (1918). First State Bank and Trust Company of Rio Grande City v. Starr County, 306 S.W.2d 246, (Civ.App., 1957). This provision of the Constitution reads as follows:

"Sec. 9 The State tax on property, exluusive of the tax necessary to pay the public debt, and

of the taxes provided for the benefit of the
public free schools, shall never exceed Thrity-
five Cents (35¢) on the One Hundred Dollars
($100) valuation; and no county, city or town
shall levy a tax rate in excess of Eighty Cents
(80¢) on the One Hundred Dollars ($100) val-
uation in any one (1) year for general fund,
permanent improvement fund, road and bridge
fund and jury fund purposes; provided further
that at the time the Commissioners' Court meets
to levy the annual tax rate for each county
it shall levy whatever tax rate may be needed
for the four (4) constitutional purposes;
namely general fund, permanent improvement
fund, road and bridge fund and jury fund so
long as the Court does not impair any out-
standing bonds or other obligations and so
long as the total of the foregoing tax levies
does not exceed Eighty Cents (80¢) on the
One Hundred Dollars ($100) valuation in
any one (1) year.  Once the Court has levied
the annual tax rate, the same shall remain
in force and effect during that taxable year;
and the Legislature may also authorize an
additional annual ad valorem tax to be levied
and collected for the further maintenance of
the public roads; provided, that a majority
of the qualified property tax paying voters
of the county voting at an election to be
held for that purpose shall vote such tax,
not to exceed Fifteen Cents (15¢) on the
One Hundred Dollar ($100) valuation of the
property subject to taxation in such county.
And the Legislature may pass local laws for
the maintenance of the public roads and high-
ways, without the local notice required for
special or local laws.  This Section shall
not be construed as a limitation of powers
delegated to counties, cities or towns by
any other Section or Sections of this Con-
stitution."  (Emphasis added)

The Court in Carroll v. Williams, supra, inter-
preted Section 9 of Article VIII as follows:

"Going to the real gist of the main
issue before us, section 9 of article 8

of our Constitution, supra, inhibits any and all
transfers of tax money from one to another
of the several classes of funds therein authorized,
and, as a sequence, the expenditure, for one
purpose therein defined, of tax money raised
ostensibly for another such purpose. The
immediate purpose in so prescribing a separate
maximum tax rate for each of the classes of
purposes there enumerated is, no doubt, to
limit, accordingly, the amount of taxes which
may be raised from the people, by taxation,
declaredly for those several purposes or
classes of purposes, respectively. But that
is not all. The ultimate and practical and
obvious design and purpose and legal effect
is to inhibit excessive expenditure for any
such purpose or class of purposes. By
necessary implication said provisions of
section 9 of article 8 were designed, not
merely to limit the tax rate for certain
therein designed purposes, but to require
that any and all money raised by taxation
for any such purpose shall be applied,
faithfully, to that particular purpose,
as needed therefor, and not to any other
purpose or use whatsoever. Those constitutional
provisions control not only the raising, but
also the application, of all such funds; and
such is the legal effect of articles 2242
and 7357, supra, when properly construed and
applied." (Emphasis added)

(Article 2242, above cited by the court, is now
Article 2352, Vernon's Civil Statutes, and Article 7357
is now Article 7048, Vernon's Civil Statutes).

In Attorney General's Opinion No. 0-298 (1939),
this office held that the Commissioners' Court of McLennan
County had the authority to construct and pay for a county
garage for housing, maintaining, repairing and servicing
county road equipment, out of the County Road Bond Fund.
The authorities relied on in said opinion hold in effect
that the phrase "maintenance of the public roads" as used
in Section 9, Article 8 of the Constitution has a broad
enough meaning to include the doing of everything
necessarily and appropriately connected with and incidental
to the laying out, opening and construction of public roads
and the maintenance of an efficient road system. The
opinion accordingly reasons that since the Commissioners'

Court is authorized to acquire machinery and equipment for the maintenance and repair of public roads, it necessarily follows that the Commissioners' Court is authorized to properly house, service and repair such equipment, and pay for same out of the County Road Bond Fund.

The same principles are equally applicable here. It would be illogical to authorize or permit the purchase of maintenance equipment out of a road maintenance fund and not authorize the purchase of facilities necessary to house and/or service such equipment out of the same fund. By the same token, if the garage facilities become obsolete or unsuitable for the purposes intended, it would be illogical to prohibit expenditure of that same fund for renovation, relocation or construction of additional facilities if circumstances require it.

If in the discretion of the Commissioners' Court, the existing location of garage or storage facilities are unsuitable, and in the judgment of the Commissioners' Court the proposed relocation will permit more efficient utilization and operation of the maintenance equipment, then the expense in relocating the existing structures or building additional structures to house the county road trucks and equipment on the new location, is directly related to the function of establishing and maintaining roads and bridges in the County. On the basis of the authorities discussed, it is our opinion that the Commissioners' Court is authorized to use the Special Road and Bridge Fund for such a necessary attribute of the public road system as adequate and suitable storage or service facilities for the county road trucks and maintenance equipment.

## S U M M A R Y

The Commissioners' Court of Henderson County is authorized to pay out of the Special Road and Bridge Fund for the removal and relocation of county "barns" and other buildings, which structures are utilized to house and service county road trucks and maintenance equipment, if the court finds that the present location is unsuitable.

Very truly yours,

WILL WILSON
Attorney General of Texas

Honorable Mack Wallace, page 6 (WW-1267)

By I. Raymond Williams, Jr.
Assistant

IRW:mkh

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Arthur Sandlin
Morgan Nesbitt
Grundy Williams
Coleman Gay

REVIEWED FOR THE ATTORNEY GENERAL
BY: Houghton Brownlee, Jr.